Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of | |
| --- | --- |
| INFORMATION ASSOCIATED WITH (928) 551-3452, (928) 551-8525, AND ANY OTHER DEVICE ASSOCIATED WITH PAUL WILLIAM RYAN, STORED AT PREMISES CONROLLED BY VERIZON, HEADQUARTERED AT ONE VERIZON WAY, BASKING RIDGE, NEW JERSEY 07920 | Case No. 21-4114mb |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of ___New Jersey___.
(identify the person or describe the property to be searched and give its location):

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

### The Affidavit of Agent Louis-Philippe Noel is incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before _____May 12, 2021_____.
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

_Any U.S. Magistrate Judge on Duty_.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)     ☐ for____ days (*not to exceed 30*)
☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *April 28, 2021 at 1:15 pm*     *(signature)*

City and State: __Flagstaff, Arizona__     Honorable Camille D. Bibles, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: 21-4114mb | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____

Executing officer's signature

_____

Printed name and title

Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of

| | |
|---|---|
| INFORMATION ASSOCIATED WITH (928) 551-3452, (928) 551-8525, AND ANY OTHER DEVICE ASSOCIATED WITH PAUL WILLIAM RYAN, STORED AT PREMISES CONROLLED BY VERIZON, HEADQUARTERED AT ONE VERIZON WAY, BASKING RIDGE, NEW JERSEY 07920 | Case No.  21-4114mb |

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):

### As further described in Attachment A.

Located in the  District of  New Jersey  , there is now concealed (*identify the person or describe the property to be seized*):

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 842j | Possession or storage of explosives |
| 26 U.S.C. § 5861d | Possessing an explosive device, which is not registered |

The application is based on these facts:
**The Affidavit of Agent Louis-Philippe Noel is incorporated herein by reference.**

☐ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is
requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA  Kevin Hakala _____     _____
                                                    *Applicant's Signature*

                                                    Trevor Culbert, FBI Special Agent
                                                    *Applicant's printed name and title*

Date and time issued: April 28, 2021 at 1:15 pm    _____
                                                    *Judge's signature*

City and State: Flagstaff, Arizona _____   Honorable Camille D. Bible, U.S. Magistrate Judge
                                                    *Printed name and title*

## AFFIDAVIT

I, Trevor Culbert (Affiant), a Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows.

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call numbers (928) 551-3453 and (928) 551-8525 ("Target Telephones"), as well as any additional phone numbers associated with PAUL WILLIAM RYAN ("RYAN"), that is stored at the premises owned, maintained, controlled, or operated by VERIZON ("the Service Provider"), a wireless telephone service provider headquartered at One Verizon Way, Basking Ridge, New Jersey 07920. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require VERIZON to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      Your Affiant is a Special Agent with the Federal Bureau of Investigation (FBI), and has been since March 2004, currently assigned to the Phoenix Division Joint Terrorism Task Force investigating matters related to domestic terrorism, which includes matters related to destructive devices. I have received training in the preparation, presentation, and service of search warrants, and have been involved in the investigation of numerous types of offenses against the United States, including those involving the use of cellular phones. Also, I am familiar with the way federal crimes are committed and the efforts of persons involved in such activity to avoid detection by law enforcement.

3.      The information contained in this affidavit is based upon my personal knowledge, training, experience, my consultation with other experienced law

enforcement officers, and the investigation by other law enforcement officers. I have not included every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause to support issuance of the requested search warrant.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.    The account to be searched consists of two (2) known telephone numbers, and a request to search VERIZON's records for any additional phone numbers related to RYAN, between the timeframe: January 1, 2020 – April 19, 2021.

      a.    Telephone Number: (928) 551-3453

      b.    Telephone Number: (928) 551-8525

      c.    Any additional phone number related to:

        i.  Name: Paul William Ryan

           1.  DOB: June 14, 1966

           2.  SSN: 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

           3.  Address: PO Box 106 Vernon, AZ 85940

## PROBABLE CAUSE

5.    Based on the facts as shown below, there is probable cause to believe that **PAUL WILLIAM RYAN ("RYAN")** possessed and stored multiple destructive devices at his residence without authority to do so, in violation of 18 U.S.C. § 842j, by storing over thirty pipe bombs, to include some wrapped with shrapnel, and Title 26 U.S.C. § 5861d, by possessing a firearm (explosive device) which is not registered to him in the National Firearms Registration and Transfer Record.

6.    **RYAN** was leasing trailer space on his property to two different tenants, which **RYAN** referred to as ranch hands. The tenants had their own trailer site and there were no common buildings or shared rooms on the property. Cory Neinest was one of

2

the tenants. **RYAN** told the tenants they must vacate the property after there was a disagreement over raising the monthly rent, which the tenants refused to pay. On March 20, 2021, while **RYAN** was not on the property, Neinest entered **RYAN's** overhead camper to retrieve Neinest's 18-millimeter wrench that **RYAN** had previously borrowed. Neinest entered the trailer belonging to **RYAN** without permission. While inside the overhead camper, Neinest observed numerous pipe bombs stored inside ammunition cans. Neinest called the Apache County Sheriff's Office to report said devices.

7.     On March 20, 2021, a search warrant of the residence known to be under the control of **RYAN**, located at Lot 18, Apache County Road N3132, Vernon, Arizona 85940, was obtained from the Justice of the Peace by the Apache County Sheriff's Office. As a result, several items were seized, including thirty-two pipe bombs, a HP laptop computer, a BLU cellular device, and other items. No federal officers were present during the search.

8.     The Apache County Sheriff's Office requested the Arizona Department of Public Safety Bomb Squad to respond. Thirty-Two (32) improvised explosive devices (IED) were collected from the overhead camper. Five of the devices were disassembled on scene for evidentiary purposes and released to ATF. The remaining explosive devices were destroyed. A burn test was conducted on a portion of the powder removed from each of the five IEDs. The burn test established it was energetic material believed to be smokeless powder.

9.     Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) conducted a search of their records and concluded **RYAN** did not possess a license to manufacture or store explosive devices.

3

10. The following photographs depict some of the devices found on **RYAN's** property:



(Photograph taken by AZ Department of Public Safety)



(Photograph of an x-ray taken on scene by AZ Department of Public Safety of some of the destructive devices containing several cylindrical objects which would become projectiles were the device to be exploded.)

4



(Photograph of an x-ray taken on scene by AZ Department of Public Safety of some of the destructive devices wrapped in nails, which would become projectiles were the device to be exploded.)

11.     **RYAN** was interviewed in Show Low, Arizona, on April 1, 2021. Although **RYAN** did not admit to manufacturing or storing IEDs at his residence, **RYAN** acknowledged the IEDs appear to be made from ingredients found throughout his residence. Additionally, **RYAN** stated investigators would most likely find his DNA on the IEDs.

12.     **RYAN** stated investigators would not find data related to explosives on his electronic devices. However, **RYAN** did state that investigators would find information related to survivalism and "preppers," including **RYAN**'s writings about corruption and derogatory writing related to ANTIFA. Based on my training and experience, the term "prepper" refers to an individual that gathers materials in preparation for a major disaster or cataclysmic event.

13.     A review of text messages provided by Billy Wayne Donaldson, a tenant of RYAN, revealed that RYAN had initiated a text chain with an unknown amount of

recipients titled 'Rebel Radio'; the messages were political in nature, in which RYAN would disparage groups such as ANTIFA and discuss survivalism.

14.     In my experience, individuals interested in destructive devices often obtain knowledge about such devices from individuals they know or by conducting open database research such as the Internet to connect with search engines, virtual proxy network services, and/or utilize manuals obtained on the dark web.   Access to these networks can be conducted via cellular devices.

## PROVIDER'S STORED ELECTRONIC COMMUNICATIONS

15.     In my training and experience, I have learned that VERIZON is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for VERIZON subscribers may be located on the computers of VERIZON. Further, I am aware that computers located at VERIZON contain information and other stored electronic communications belonging to unrelated third parties.

16.     Wireless phone providers often provide their subscribers with voicemail services.   In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail.   If the subscriber does not delete the message, the message may remain in the system of VERIZON for weeks or months.

17.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers.   This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by VERIZON for short periods incident to and following their transmission.   In addition, providers occasionally retain printouts from

6

original storage of text messages for a particular subscriber's account.

18.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages.   Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

19.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

20.     Many wireless providers retain information about the location in which a particular communication was transmitted or received.   This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas)

received a radio signal from the cellular device and thereby transmitted or received the communication in question.

21.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

22.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

23.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search

for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require VERIZON to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

25.     Based upon your Affiant's training, experience, and observations your Affiant submits that there is probable cause to believe that in the accounts associated with the target telephones listed in Attachment A, there exists information and data constituting evidence, fruits or instrumentalities of violations of 18 U.S.C. § 842j, which makes it illegal to possess and store explosives, and Title 26 U.S.C.  § 5861d, by possessing a firearm (explosive device) which is not registered to him in the National Firearms Registration and Transfer Record.

26.     Based on the forgoing information, your Affiant requests the Court issue the proposed search warrant authorizing examination of the devices described in Attachment A to seek the items described in Attachment B.

        Respectfully Submitted,


                                        Special Agent Trevor Culbert
                                        Federal Bureau of Investigation


Subscribed and sworn to before me on _Apri/ 28_____, 2021.


HONORABLE CAMILLE D. BIBLES
UNITED STATES MAGISTRATE JUDGE


10

## ATTACHMENT A

### Property to be Searched

This search warrant applies to records and information associated with a cellular telephone assigned call numbers (928) 551-3453 and (928) 551-8525 ("Target Telephones"), as well as any additional phone numbers associated with PAUL WILLIAM RYAN ("RYAN"), that is stored at the premises owned, maintained, controlled, or operated by VERIZON ("the Service Provider"), a wireless telephone service provider headquartered at One Verizon Way, Basking Ridge, New Jersey 07920.

- Name: Paul William Ryan
  - DOB: June 14, 1966
  - SSN: 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
  - Address: P.O. Box 106, Vernon, AZ 85940

## ATTACHMENT B

### Particular Things to be Seized

The following items of evidence, contraband, fruits, and instrumentalities that relate to violations of, *inter alia*: 18 U.S.C. § 842j, possession and storage of explosives that involve Paul William RYAN, and any plans for utilizing said explosives:

To the extent that the information described in Attachment A is within the possession, custody, or control of **VERIZON**, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to **VERIZON** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **VERIZON** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All voice mail, text, and multimedia messages from January 1, 2020 to April 19,2021, stored and presently contained in, or on behalf of the account or identifier;

b.    All existing printouts from original storage of all of the text messages described above;

c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 1, 2020 to April 19,2021;

d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message from January 1, 2020 to April 19, 2021;

e.    All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including

12

subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

     f.     Detailed billing records, showing all billable calls including outgoing digits, from January 1, 2020 to April 19, 2021;

     g.     All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from January 1, 2020 to April 19, 2021;

     h.     Incoming and outgoing telephone numbers, from January 1, 2020, to April 19, 2021;

     i.     All records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

     j.     All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

     k.     All records pertaining to communications between **VERIZON** and any person regarding the account or identifier, including contacts with support services and records of actions taken.

The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 842j (possession and storage of explosives), from January 1, 2020 to April 19, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

13

a.     Any material or information that describes how to produce, make or manufacture explosive devices, including recipes, cookbooks and/or how-to manuals describing weapons of mass destruction and/or explosive devices;

b.     Any material, information, photographs or diagrams concerning attacks and any other materials which reflect, refer, relate to or are for use in ambush attacks, bomb making, or conspiracy to commit attacks using explosives, plus the identity of attack conspirators, and/or the distribution of information relating to explosive devices;

c.     Any material or information pertaining to a motive to engage in an attack using explosive devices;

d.     Any and all financial, credit card and bank account information including but not limited to bills and payment records, including those relating to the purchase of explosives, materials to make explosive devices and improvised explosive devices;

e.     Records, documents, programs, applications, and materials pertaining to preppers or civil unrest in the United States;

f.     Records, documents, program, applications, and materials pertaining to possessing or selling explosive precursors or explosive devices;

1.     This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by VERIZON, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of VERIZON. The attached records consist of _____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.   I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **VERIZON**, and they were made by **VERIZON** as a regular practice; and

b.     such records were generated by **VERIZON'S** electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **VERIZON** in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by **VERIZON**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                              Signature